# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| MARTHA GARRETT, | ) |
| Plaintiff, | ) |
| v. | ) No. 05-00204-CV-W-DW |
| THE CHURCH OF THE NAZARENE, et al., | ) |
| Defendants. | ) |

## ORDER

Before the Court are defendant Ardee Coolidge's motions to dismiss (Doc. 9) and to strike plaintiff Martha Garrett's affidavit (Doc 12). After reviewing the pleadings and relevant law, this court strikes the affidavit and dismisses the claims against Coolidge for lack of personal jurisdiction.

Garrett sues Coolidge, the Church of the Nazarene, Church of the Nazarene World Mission, General Board of the Nazarene, and Defendant Supervisors. Garrett alleges that Coolidge sexually abused her in 1959 in a school the church was establishing in Argentina, where Coolidge served as a missionary. The complaint asserts: (1) Garrett resides in Massachusetts; (2) the Church of the Nazarene is an unincorporated association with a primary place of business in Missouri; (3) Church of the Nazarene World Mission is a Missouri subsidiary of the Church of the Nazarene, and Coolidge's employer at the time in question; (4) the General Board of the Church of the Nazarene is a Missouri subsidiary of the Church of the Nazarene, and was, at relevant times, a supervisor of missionaries including Coolidge; and (5) Coolidge is a resident of Florida, and an active minister with the Church of the Nazarene World Mission currently in Argentina. The complaint alleges that, at all relevant times, Coolidge was

affiliated with the Church of the Nazarene.

In his Rule 12(b) motion, Coolidge argues he is not subject to personal jurisdiction in Missouri. Garrett responds that affiliation with the Missouri-based Church of the Nazarene is sufficient contact for personal jurisdiction. Garrett also introduces an affidavit, attempting to establish Coolidge's physical and contractual contacts with Missouri.

First, this Court addresses the motion to strike the affidavit (Doc. 12). Coolidge argues statements in the affidavit are speculation, hearsay, and conjecture—not drawn from Garrett's personal knowledge—that should be stricken. See Fed. R. Civ. P. 56(e); McSpadden v. Mullins, 456 F.2d 428, 430 (8th Cir. 1972) (affidavits not made on personal knowledge or not containing admissible evidence are subject to motions to strike). Garrett does not respond to the motion to strike. The affidavit states, in relevant part:

> 3. I married a Nazarene Minister and have first hand knowledge of a missionary's typical contract and contacts with the Nazarene Church in Kansas City.
> 4. Those contacts include, training, instruction and supervision as a missionary in Kansas City; payment of salary; provision of life, health and housing; and, other perquisites and benefits emanating form [sic] Kansas City.
> 5. In addition, I am the daughter of Francisco Laiacona (deceased), a former Nazarene Minister (Argentine National).
> 6. My father, like Coolidge, was supervised by Doctor Cochran (Coolidge's Father in Law) who was based out of the Kansas City, Church of the Nazarene World Mission.
> 7. Each Missionary, such as Coolidge, spends weeks at a time in Kansas City attending classes and receiving training on how to acclimate to the new culture he was being sent to and observing local Church traditions.
> 8. Prior to being sent to Argentina, a missionary, such as Coolidge would ship four years worth of supplies (personal, church and office) from the Church in Kansas City to Argentina.
> 9. As a missionary, Coolidge would have a one year furlough in Kansas City every four years, he would receive his Visa from Kansas City, and even a driver's license.
> 10. Coolidge would have received help for his children, including

> schooling, maids, nannies and cars, and other direct monetary, insurance and retirement benefits paid directly by the Church from Kansas City.
> 11. In fact, he would still be receiving retirement benefits, housing, insurance and even legal services for this case, emanating from and paid by the Nazarene Church in Kansas City.

These statements that Coolidge had (and has) certain contacts with Missouri are speculation and conjecture drawn from Garrett's knowledge of the Church of the Nazarene. They are not based on personal knowledge of admissible facts showing Coolidge's actual contacts with the jurisdiction. See Fed. R. Civ. P. 56(e); McSpadden, 456 F.2d at 430. Therefore, this Court grants the motion to strike.

With that resolved, the Court determines whether the complaint sufficiently alleges personal jurisdiction over Coolidge. "To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction." Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 647 (8th Cir. 2003). All evidence must be viewed in the light most favorable to Garrett, with all factual disputes resolved in her favor. See Romak USA, Inc. v. Rich, 384 F.3d 979, 983 (8th Cir. 2004). But Garrett carries the burden of proof, which does not shift to the party challenging jurisdiction. See id. at 983-84.

"A federal court in a diversity action may assume jurisdiction over nonresident defendants only to the extent permitted by the long arm statute of the forum state and by the Due Process Clause." Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1073 (8th Cir. 2004). "[T]he Missouri long-arm statute authorizes the exercise of jurisdiction over non-residents to the extent permissible under the due process clause." Porter v. Berall, 293 F.3d 1073, 1075 (8th Cir. 2002) (internal quotation omitted); see also Romak, 384 F.3d at 984. Thus, the question of personal jurisdiction turns on due process analysis. Porter, 293 F.3d at 1075.

3

To satisfy due process, a defendant must have sufficient minimum contacts with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980) (internal quotations omitted). There must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).

In the due process inquiry, a five-factor test determines the sufficiency of the defendant's contacts. This Court must determine "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996). Significant weight is given to the first three factors. Dever, 380 F.3d at 1074. Elaboration on the third factor—relation of the cause to the contacts—distinguishes general and specific jurisdiction. Burlington, 97 F.3d at 1102. "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." Id. at 1103. Where, as here, "specific personal jurisdiction over a non-resident is asserted, due process is satisfied if the defendant has purposely directed its activities at forum residents, and the litigation results from injuries arising out of, or relating to, those activities." Id.

The gravamen of the complaint is that Coolidge sexually abused Garrett while acting within the course and scope of employment with the Missouri-based church. Garrett contends

4

that affiliation with the church by itself establishes personal jurisdiction. However, "jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him. . . . Each defendant's contacts with the forum State must be assessed individually." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984).

The individual assessment of Coolidge's Missouri contacts is straightforward, because his sole contact is affiliation with the church. Coolidge resides in Florida, working as a pastor in Argentina, where the alleged illegal acts occurred. As to the first two factors from Burlington, the court concludes that the nature, quality, and quantity of contact with Missouri weighs against personal jurisdiction. See 97 F.3d at 1102. Further, the relation of the causes of action to the contact is tenuous. True, Coolidge's employment caused him to be in Argentina in 1959, but his relation to Missouri did not give rise to the specific acts alleged in the complaint. The third factor does not support specific personal jurisdiction. See Romak, 384 F.3d at 984-85. Finally, because Garrett is a resident of Massachusetts and Coolidge is a resident of Florida, it strains logic to suggest that this Court's exercise of personal jurisdiction over Coolidge would fulfill either Missouri's interest in providing a forum for its residents, or the convenience of the parties.

Garrett has not made a prima facie case that Coolidge has sufficient minimum contacts with Missouri such that maintenance of this suit does not offend traditional notions of fair play and substantial justice. It is hereby

ORDERED that Coolidge's motion to strike the affidavit (Doc. 12) is GRANTED. The motion to dismiss for lack of personal jurisdiction (Doc. 9) is GRANTED, and Garrett's claims against Coolidge are DISMISSED for lack of personal jurisdiction.

                                                    /s/ DEAN WHIPPLE
                                                        Dean Whipple
Date: September 12, 2005                     United States District Judge